

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAUL LOCHARD, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 03 C 3835 |
| | ) Magistrate Judge Ian H. Levin |
| PROVENA SAINT JOSEPH MEDICAL CENTER, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Lochard ("Lochard") seeks recovery against Defendant Provena Saint Joseph Medical Center ("Provena") for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Before the Court is Provena's motion for summary judgment. For the reasons set forth below, the Court grants Provena's motion.

## BACKGROUND FACTS

On September 9, 2002, Lochard[1], who is an African-American, applied for a Security Officer position at Provena.[2] (Def.'s LR56.1(a)(3) St. ¶ 2, Pl.'s LR56.1(b)(3)(B) St. ¶ 2.) In his employment application, Lochard indicated that he was interested in a part-time Security Officer position and was only available for the night shift. (*Id.* ¶ 5.) At the time, Lochard submitted his employment application on September 9, 2002, there were no Security Officer positions available at Provena.

---

[1] Lochard's ethnic background is Haitian. (Pl.'s LR56.1(b)(3)(B) St. ¶ 2.)

[2] Provena is an acute-care hospital which provides inpatient, outpatient and urgent care services for Joliet, Illinois and the surrounding areas. (Def.'s LR56.1(a)(3) St. ¶ 1.)

(*Id.* ¶ 9.)

In January of 2003, however, Security Officer positions became available at Provena and Lochard was contacted for an interview by Joshua Klima (hereinafter "Klima"), Provena's Security Department Supervisor. (Def.'s LR56.1(a)(3) St. ¶¶ 10, 15.) Lochard was interviewed by Klima on January 29, 2003. (*Id.* ¶ 19.)

Klima subsequently interviewed five other candidates for the Security Officer positions at the end of January of 2003 and in early February of 2003.[3] (Def.'s LR56.1(a)(3) St. ¶ 16.) Three individuals were ultimately hired to fill these positions; however, Lochard was not one of those selected to fill a Security Officer position. (*Id.* ¶¶ 17, 29.) The three individuals hired by Provena included an African-American male, a Caucasian male and a Caucasian female. (*Id.* ¶¶ 25, 26, 27.)

Lochard was notified by letter dated March 4, 2003 that he had not been chosen to fill the Security Officer position at Provena. (Def.'s LR56.1(a)(3) St. ¶ 29.)

On April 23, 2003, after being denied employment by Provena, Lochard filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC") alleging that he had been discriminated against on the basis of his race. (Def.'s LR56.1(a)(3) St. ¶ 44, Dkt. No. 1.) Lochard received a notice of his right to sue in federal court dated May 8, 2003 and subsequently instituted the subject lawsuit. (Dkt. No. 1.)

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine

---

[3]Provena received about six employment applications for Security Officer positions from September of 2002 through January of 2003. (Def.'s LR56.1(a)(3) St. ¶ 8.)

2

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party had produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC v. Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Linc*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505 or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993). "[S]ummary judgment is improper in a discrimination case where a material issue involves any weighing of conflicting indications of motive and intent." *Stumph v. Thomas & Skinner,*

*Inc.*, 770 F.2d 93, 97 (7th Cir. 1985)(*citing Kephart v. Inst. of Gas Tech.*, 630 F.2d 1217, 1218 (7th Cir. 1980)). Finally, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Freeman v. Madison Metro. Sch. Dist.*, 2000 WL 1640952, *3 (7th Cir. Nov. 2, 2000)(*quoting Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

## ANALYSIS

Under Title VII, it shall be unlawful for an employer "to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . ." 42 U.S.C. § 2000e-2(a)(1). In order to prevail on an employment discrimination claim under Title VII, a plaintiff must show that the employer had an intent to discriminate; such a showing may be made directly, or indirectly, through the use of an inferential burden-shifting method. *Rhodes v. Illinois Dep't of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004).

### I. DIRECT METHOD OF PROOF UNDER TITLE VII

The direct method of proof requires that a plaintiff present either direct or circumstantial evidence that the employer's decision not to hire him was motivated by an impermissible purpose, such as his race. *Wallace v. SMC Pneumatics*, 103 F.3d 1394, 1397 (7th Cir. 1997); *Rhodes*, 359 F.3d at 504. Direct evidence of discrimination "is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003)(*citing Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)); *see also Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997). In short, "[d]irect evidence essentially requires an admission by the decision-

4

maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000)(*citing Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). Thus, a proffer of direct evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Cowan v. Glenbrook Security Services, Inc.*, 123 F.3d 438, 443 (7th Cir. 1997)(*quoting Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir. 1989)). "[I]nappropriate but isolated comments that amount to no more than 'stray remarks' in the workplace will not do." *Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997)(*citing Randle*, 876 F.2d at 569)); *see also Cowan*, 123 F.3d at 444 ("stray remarks in the work place, while perhaps probative of sexual harassment [here race], . . . cannot justify requiring the employer to prove that its hiring or firing or promotion decisions were based on legitimate criteria.")(*quoting Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). Rather, "isolated comments must be contemporaneous with the [adverse action] or causally related to the [applicable] decision-making process." *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996)(*citing Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775, 104 L.Ed.2d 268). This type of evidence is rare. *Rogers*, 320 F.3d at 753; *Volovsek v. Wisconsin Dep't of Agriculture, Trade and Consumer Protection*, 344 F.3d 680, 689 (7th Cir. 2003).[4]

Direct evidence can also be proven by constructing a "convincing mosaic" of circumstantial evidence that allows a jury to infer intentional discrimination on the part of the decisionmaker.

---

[4]Other cases also hold that "[r]emarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality." *Sanghvi v. St. Catherine's Hosp., Inc.*, 258 F.3d 570, 574 (7th Cir. 2001) and cases cited therein.

*Rhodes*, 359 F.3d at 504 (*citing Troupe*, 20 F.3d at 737); *Volovsek*, 344 F.3d at 689 (*citing Rogers*, 320 F.3d at 753). The circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action" *Rhodes*, 359 F.3d at 504 (*quoting Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)) and be "directly related to the employment decision." *Venturelli v. ARC Community Services, Inc.*, 350 F.3d 592, 602 (7th Cir. 2003)(*quoting Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001)).

If a plaintiff can demonstrate that an illegal criterion such as race was a motivating factor in the adverse employment action, the burden shifts to the employer to demonstrate that it would have made the same decision even if the illegal criterion had not been considered. *Venters*, 123 F.3d at 973 (*citing Price Waterhouse* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268). "The persuasiveness of that showing will normally be for the finder of fact to assess, unless the court can say without reservation that a reasonable finder of fact would be compelled to credit the employer's case on this point." *Id.* (citations omitted.) If the employer, however, succeeds in proving that it would have made the same decision absent the illegal criterion, a plaintiff may still obtain declaratory and injunctive relief as well as attorney's fees. *See id.* at n.7.

Lochard avers that there is direct evidence in this case which establishes race[5] discrimination

---

[5]Lochard also alleges discrimination on the basis of color in his complaint of employment discrimination filed on June 5, 2003. (Dkt. No. 1.) His color discrimination claim, however, cannot be considered by the Court because it was not included as part of Lochard's EEOC Charge of Discrimination. (*Id.*) *See e.g., Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985)("[T]he requirement that the scope of the EEOC charge limit the scope of the subsequent complaint is in the nature of a condition precedent with which litigants must comply rather than constituting a component of subject matter jurisdiction.").

on the part of Provena. (Pl.'s Resp. at 2-7.) Specifically, Lochard contends that a mixed motive theory applies herein because his protected class, which is African-American, was a motivating factor in Provena's decision not to hire him to fill one of the Security Officer positions. (*Id.* at 2-3.) Lochard thus alleges that Provena's allegedly sole purported reason for not hiring him is in fact false. (*Id.* at 3.) For example, Klima, Provena's Security Department Supervisor, who interviewed Lochard and decided not to hire him, stated the following in a sworn declaration:

> "My decision not to select [Lochard] for one of the Security Guard positions was solely based on [his] demeanor and 'standoffishness' during the interview process." (Klima Decl. ¶ 16; Pl.'s Resp. at 4.)

Lochard contends, however, that the problem with Klima's declaration statement is that it is unsupported and materially contradicted by Klima's notation referencing Lochard's heavy accent on an Applicant Interview Guide[6] which Klima completed at the time he interviewed Lochard on January 29, 2003 and by a March 4, 2003 letter[7] sent to Lochard informing him of his denial of employment. (Pl.'s Resp. at 4-6, Pl.'s Ex. 1 & 3.) Klima made the following notation under the Interviewers Impressions section of the Applicant Interview Guide: "Heavy accent very hard to

---

[6]Klima completed an Applicant Interview Guide form when he interviewed Lochard. (Pl.'s Ex. 1 at 000009-10.) The Applicant Interview Guide lists relevant job questions and the responses Lochard gave during his interview with Klima. (*Id.* at 000009.) Moreover, the Applicant Interview Guide contains a chart where Klima rated Lochard's personal characteristics (i.e., personal appearance; poise, manner; communication; and cooperation with interviewer) and job-related characteristics (i.e., experience for job; knowledge of job; people skills; and outgoing personality) using a scale of one to four. (*Id.* at 000010.) The Applicant Interview Guide also required Klima to provide an overall rating of Lochard using a scale of one to five and provided a comment section. (*Id.*)

[7]The March 4, 2003 letter states, in pertinent part: "We have decided on another candidate for the Security position, we will keep your application o[n] file in case another position opens that fits your needs." (Pl.'s Ex. 3.)

7

understand 4 Question had to have him repeat answer."[8] (Pl.'s Resp. at 4, Pl.'s Ex. 1 at 000010.) Lochard thus asserts that the Applicant Interview Guide contains direct evidence of Klima's focus on a characteristic of Lochard's race and national origin; namely, his accent.[9] (Pl.'s Resp. at 4.)

Lochard next contends that the Applicant Interview Guide and March 4, 2003 denial letter impeach the credibility of Klima's declaration testimony. (Pl.'s Resp. at 4.) Lochard thus avers that Klima's testimony is not credible because while Klima offers a declaration to this Court of his purported state of mind for not hiring him, Klima failed to attach the Applicant Interview Guide to his declaration. (*Id.*) Moreover, Lochard asserts that Klima never mentions the Applicant Interview Guide and his comments referring to Lochard's heavy accent in his declaration which further undermines his credibility. (*Id.* at 5.)

Provena, on the other hand, contends that Lochard has failed to proffer any direct evidence of race discrimination. (Def.'s Reply at 9.) Accordingly, Provena avers that Lochard is subject to the indirect burden-shifting analysis. (*Id.*)

The Court finds Lochard's assertions unavailing. First, the Court notes that Seventh Circuit case law states in regard to an individual's accent that "accent is generally recognized as a manifestation of national origin." *Hasham v. California State Board of Equalization*, 200 F.3d 1035,

---

[8] In reference to Lochard's answer to the following question on the Applicant Interview Guide: "Outside of Security issues what is the most important factor you can think of relating to the previous question?," Klima noted "Hard to understand answer - asked to repeat could not understand still." (Pl.'s Ex. 1 at 000009). Klima further noted, in the section on communication, that Lochard was "hard very hard to understand." (*Id.* at 000010.)

[9] Lochard also avers that the Applicant Interview Guide and March 4, 2003 denial letter do not indicate that the sole reason Lochard was not selected to fill one of the Security Officer positions was because of his demeanor and standoffishness during his interview. (Pl.'s Resp. at 5.)

8

1050 (7th Cir. 2000). Accordingly, because Lochard has not pled a national origin discrimination claim under Title VII in either his complaint of employment discrimination or his EEOC Charge of Discrimination, Klima's reference to Lochard's heavy accent on the Applicant Review Guide is inapposite and cannot be viewed as constituting direct evidence of race discrimination.

Next, the Court finds that Klima's written statement: "Heavy accent very hard to understand 4 Question had to have him repeat answer" by itself does not constitute direct evidence of discriminatory intent or conduct on the part of Provena. Rather, as demonstrated by Seventh Circuit case law, direct evidence of discrimination is evidence which proves discriminatory conduct without reliance on inference or presumption. *See e.g., Cerutti*, 349 F.3d at 1061. Moreover, an isolated stray comment or remark, without more, is typically not actionable under Title VII. *See e.g., Cowan*, 123 F.3d at 444 ("stray remarks in the work place, while perhaps probative of sexual harassment [here race], . . . cannot justify requiring the employer to prove that its hiring or firing or promotional decisions were based on legitimate criteria")(*quoting Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775, 104 L.Ed.2d 268); *Venters*, 123 F.3d at 973 ("[I]nappropriate but isolated comments that amount to no more than 'stray remarks' in the workplace will not do.")(*citing Randle*, 876 F.2d at 569). Klima's written statement consisted of no more than an isolated stray remark noting Lochard's heavy accent and the fact that he had difficulty understanding Lochard during the interview. Accordingly, because the proffered evidence neither speaks directly to the issue of discriminatory intent, nor relates to the employment decision at issue, it does not constitute direct evidence of intentional discrimination on the part of Provena. *See e.g., Cowan*, 123 F.3d at 443; *see also Radue*, 219 F.3d at 616 ("[d]irect evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus.")(*quoting Troupe*, 20 f.3d at 736); *Randle*, 876 F.2d

9

at 568 ("Direct evidence would include statements by the employer to the employee that s/he was being fired because of age.")(*quoting Maxfield v. Sinclair Int'l*, 766 F.2d 788, 791 (3rd Cir. 1985)).[10]

The Court further finds that the subject statement noting Lochard's heavy accent does not constitute circumstantial evidence that would allow a trier of fact to infer that Provena intentionally discriminated against Lochard on the basis of his race when he was not hired to fill one of the Security Officer positions. *See e.g., Rhodes*, 359 F.3d at 504; *Volovsek*, 344 F.3d at 689. As discussed *supra*, Klima's written statement does not point directly to a discriminatory reason for Provena deciding not to hire Lochard and, moreover, the statement cannot be viewed as being directly related to the employment decision. *See e.g., Rhodes*, 359 F.3d at 504; *Venturelli*, 350 F.3d at 602. Accordingly, Klima's written statement does not constitute circumstantial evidence of discriminatory intent on the part of Provena.

Lochard has also failed to demonstrate a mixed motive theory under Title VII. Specifically, Lochard cannot establish that race, the alleged illegal criterion, was a motivating factor in Provena's decision not to hire him. Herein, as discussed, Klima's written statement does not constitute direct evidence of discriminatory intent on the part of Provena because it is a facially innocuous statement which simply notes Klima's heavy accent and his difficult in understanding Lochard's responses to the questions he asked during the January 29, 2003 interview.

Therefore, the Court finds Lochard's contentions that Klima's written statement on the Applicant Interview Guide constitutes direct evidence or evidence that would fit within a mixed motive rubric without merit because the subject statement does not rise to the level of that which

---

[10] It also bears noting that there has been no admission by Klima or Provena that Lochard was not hired to fill one of the Security Officer positions because of his race.

would demonstrate discriminatory intent or animus on the part of Lochard.[11]

## II. INDIRECT METHOD OF PROOF

In the absence of direct or circumstantial evidence of discriminatory intent, a plaintiff may show discriminatory intent indirectly under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* indirect method of proof requires that the plaintiff first establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. To establish a prima facie case of discrimination on the basis of a failure to hire claim, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for an open position for which he applied; (3) he was rejected; and (4) the employer filled the position with someone not in the plaintiff's protected class, or the position remained open.[12] *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999).

If the plaintiff establishes a prima facie case, the defendant must then articulate a legitimate,

---

[11] The March 4, 2003 denial of employment letter likewise does not constitute direct evidence of discriminatory intent or animus based on Lochard's race and does not contradict Klima's declaration statement indicating he did not select Lochard for a Security Guard position because of his demeanor and standoffishness during the interview process.

[12] Following the Supreme Court's decision in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), the Seventh Circuit has "disavowed prior cases from this circuit suggesting that a Title VII plaintiff must show that []he was replaced by someone of a different race, sex, and so on." *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 793 (7th Cir. 1997)(*citing Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)(per curiam)). The Seventh Circuit has "emphasized that although that kind of proof 'may help to raise an inference of discrimination,' it is not required to make out a prima facie case, so long as there is some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion." *Id.* Accordingly, the Supreme Court's opinion in *O'Connor* makes clear "that such proof is not inevitably necessary." *Leffel*, 113 F.3d at 793.

nondiscriminatory reason for its employment decision. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp.*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. Once the defendant provides a legitimate reason for its employment decision, the burden shifts back to the plaintiff to establish that the defendant's proffered reason is pretextual. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207; *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806-07 (7th Cir. 1999). The burden of persuasion remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207.

Lochard avers that he has sufficient evidence to establish a prima facie case of race discrimination. (Pl.'s Resp. at 7-12.) In addition, Lochard contends that Provena's proffered sole reason for not hiring him due to his demeanor and standoffishness during the interview process was merely a pretext for discriminating against him in the hiring process. (*Id.* at 12-13.)

Provena, however, asserts that Lochard has failed to satisfy the elements of a prima facie case of race discrimination because he cannot show he was qualified for the Security Officer position and Provena hired an African-American applicant to fill one of the Security Officer positions. (Def.'s Reply at 1.) Provena contends that it weighed the qualifications of its applicants, including their customer service skills and ability to work more than one shift and determined that Lochard's qualifications in these areas were deficient when compared to those of the other applicants. (*Id.* at 2.) Provena further avers that even assuming *arguendo* that Lochard can establish a prima facie case, it had legitimate business reasons for not hiring him which were not a pretext for race discrimination. (*Id.* at 2.)

The Court initially notes that in order to establish a prima facie case of discrimination on the basis of a failure to hire claim, Lochard must show that (1) he is a member of a protected class; (2)

he was qualified for an open position for which he applied; (3) he was rejected; and (4) the employer filled the position with someone not in the plaintiff's protected class, or the position remained open. *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). Herein, Lochard is unable to establish a prima facie case of race discrimination because he cannot satisfy the fourth element since Provena hired an African-American applicant to fill one of the three Security Officer positions.[13] (Klima Dec. ¶¶ 19-20.)

Even assuming *arguendo* that Lochard can establish a prima facie case of discrimination, Provena has met its burden of articulating legitimate non-discriminatory reasons for not hiring him. Klima's decision not to hire Lochard to fill one of the Security Officer positions was solely based on Lochard's "demeanor and 'standoffishness'" during the interview process.[14] (Klima Decl. ¶ 16.) For example, in his declaration, Klima stated that during the interview, Lochard answered "none" defiantly to questions regarding weak points and areas for improvement. (*Id.* ¶ 17.) Klima also stated that Lochard provided one-word responses to open-ended interview questions regarding his customer service skills and plans for future education. (*Id.* ¶ 18.) When asked about his plans for further education, Lochard responded "none." (*Id.*) In addition, the Court notes that Lochard appears to have responded to many of the interview questions with only several word responses.

---

[13]The Court finds that Lochard was qualified for the Security Officer position. The Court basis this finding on the fact that Provena's Policy Manual states under the heading of Selection/Hiring Procedures that: "[q]ualified candidates will be scheduled with the hiring manager for interviews." (Pl.'s Ex. 4 at 000013.) Therefore, Provena implicitly would not have scheduled an interview with Lochard for the Security Officer position unless he was qualified.

[14]In comparison to the candidates hired by Klima, Lochard was interested in a part-time Security Officer position and was only available for the night shift. (Klima Decl. ¶ 15.) At the time of the interview, Lochard had a private detective certificate, approximately twelve years of security experience and had no plans to continue his education. (Pl.'s Ex. 1 at 000009, Pl.'s Ex. 2 at 000006-7, Lochard Decl. ¶ 5.)

13

Next, with regard to issue of pretext, Lochard avers that Klima's proffered sole reason (i.e., Lochard's demeanor and standoffishness) for not hiring him is an after-the-fact pretext for its action in light of Klima's written comment on the Applicant Interview Guide stating: "Heavy accent very hard to understand 4 Question had to have him repeat answer." (Pl.'s Resp. at 13, Pl.'s Ex. 1 at 000010.) In addition, Lochard contends that the proffered sole reason is a pretext given that Klima referenced Lochard's accent instead of simply noting his inability to understand some of the answers Lochard gave during the interview. (Pl.'s Resp. at 13.) Accordingly, Lochard asserts that Klima's proffered sole reason is impeached by Klima's failure to mention the Applicant Interview Guide in his declaration and, moreover, by the act of Klima "hiding from his notations regarding Mr. Lochard's accent." (*Id.* at 13.)

"Pretext . . . means a lie, specifically a phony reason for some action." *Plair,* 105 F.3d at 348; *see also O'Connor v. DePaul University,* 123 F.3d 665, 671 (7th Cir. 1997)("On the issue of pretext, our only concern is the honesty of the employer's explanation . . ."); *Tincher v. Wal-Mart Stores, Inc.,* 118 F.3d 1125, 1130 (7th Cir. 1997)("The pretext inquiry focuses on the honesty – not the accuracy – of the employer's stated reason for the [adverse job action].") A plaintiff need only "produce evidence from which a rational factfinder could infer that [the employer] lied about its proffered reasons . . ." *Weisbrot v. Medical College of Wisconsin,* 79 F.3d 677, 682 (7th Cir. 1996). Moreover, "[t]he fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual." *Essex v. United Parcel Service, Inc.,* 111 F.3d 1304, 1310 (7th Cir. 1997). A plaintiff may establish pretext by proving one of the following: "(1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the [adverse action]; or (3) the proffered reasons were

14

insufficient to motivate the [adverse action]." *Wolf v. Buss, Inc.*, 77 F.3d 914, 919 (7th Cir. 1996).

The Court finds that Lochard has failed to demonstrate Provena's proffered reason for not hiring him to fill a Security Officer position is a pretext for discriminating against him on the basis of his race. Initially, the Court notes that Klima's written statement on the Applicant Interview Guide referencing Lochard's heavy accent does not, as a matter of law, establish pretext on the part of Provena. *See e.g., Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1266 (7th Cir. 1993)("Evidence of a supervisor's occasional or sporadic use of a slur directed at an employee's race, ethnicity, or national origin is generally not enough to support a claim under Title VII."); *O'Connor v. Viacom, Inc.*, No. 93 CIV. 2399, 1996 WL 194299, at *5 (S.D.N.Y. Apr. 23, 1996)(three isolated remarks made by a supervisor were insufficient to establish national origin discrimination); *Sergilus v. Covenant House Under 21*, No. 96 CIV. 6210, 1999 WL 717274, at *2 (S.D.N.Y. Sept. 15, 1999)(one isolated racial epithet made by a supervisor who aided in the plaintiff's termination was not actionable). In opposing Provena's motion for summary judgment, Lochard has failed to provide the requisite nexus between Klima's written statement noting Lochard's heavy accent and Provena's decision not to hire him. Thus, Klima's remarks, without more, do not give rise to an inference of race discrimination or establish pretext herein.

For the reasons discussed *supra*, Lochard has failed to establish race discrimination under Title VII through either direct evidence or by the use of the indirect burden-shifting method. Moreover, Lochard has not produced any evidence that Provena's decision for not hiring him was a pretext for discrimination. Lochard's race discrimination claim is therefore unavailing. Accordingly, when viewing the evidence in the light most favorable to Lochard, there are no genuine issues of material fact and a fair-minded jury could not return a verdict for him on the evidence

presented as it relates to his race discrimination claim.

## CONCLUSION[15]

Based on the foregoing, Provena's motion for summary judgment is granted and the cause is dismissed with prejudice.

ENTER:

_____
IAN H. LEVIN
**United States Magistrate Judge**

**Dated: April 22, 2005**

---

[15]Lochard has withdrawn his 1999 and 2000 failure to hire claims. (Pl.'s Resp. at 1.)

In view of the Court's ruling herein, it is deemed unnecessary to consider Lochard's and Provena's other arguments raised herein.